**GUCOVSCHI LAW FIRM, PLLC**
Adrian Gucovschi (State Bar No. 360988)
Nathaniel H. Sari (State Bar No. 362634)
165 Broadway, Fl. 23
New York, New York 10005
Telephone: (212) 884-4230
E-Mail: adrian@gucovschilaw.com
nathaniel@gucovschilaw.com

*Attorneys for Plaintiff and the Putative Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

Rich Winn, individually and on behalf of all others similarly situated,

Plaintiff,

v.

Rana Meal Solutions, LLC

Defendant.

Case No. '26CV2180 CAB DEB

**CLASS ACTION COMPLAINT**

(1) UNFAIR COMPETITION
(2) CONSUMER LEGAL REMEDIES ACT
(3) FALSE ADVERTISING
(4) BREACH OF EXPRESS WARRANTY
(5) BREACH OF IMPLIED WARRANTY
(6) NEGLIGENT MISREPRESENTATION
(7) INTENTIONAL MISREPRESENTATION/FRAUD
(8) BREACH OF CONSUMER PROTECTION STATUTES
(9) UNJUST ENRICHMENT

**DEMAND FOR JURY TRIAL**

Plaintiff Rich Winn ("Plaintiff") brings this action on behalf of himself and all others similarly situated against Defendant Rana Meal Solutions LLC ("Rana" or "Defendant"). Plaintiff makes the following allegations pursuant to the investigation of his counsel and upon information and belief, except as to allegations specifically pertaining to himself and his counsel, which are based on personal knowledge.

## **INTRODUCTION**

1. This class action aims to hold Defendant, Rana Meal Solutions LLC, responsible for failing to truthfully and accurately label and market its food products.

2. Defendant manufactures, distributes, advertises and sells a line of Italian food products (the "Products"[1]).

3. Defendant uniformly makes the representation on the front label of the Products that the Products contain "no preservatives" (the "Misrepresentation") causing reasonable consumers such as Plaintiff to believe that the Products are free from artificial preservatives.

4. But contrary to Defendant's Misrepresentation, the ingredient list on the Products' back panel reveals the presence of manufactured citric acid, an ingredient that functions as a preservative and is produced through industrial fermentation and chemical processing.

5. Like other reasonable consumers, Plaintiff was deceived by Defendant's unlawful conduct and brings this action individually and on behalf of all similarly situated consumers to remedy Defendant's unlawful acts.

## **THE PARTIES**

6. Defendant Rana Meal Solutions LLC is a Illinois company with its principal place of business located in Bartlett, Illinois. At all times during the class period, Defendant was the manufacturer, distributor, marketer, and seller of the Products.

---

[1] The Products include the following: Defendant's 5 Cheese Tortellini, 4 Cheese Ravioli, Cheese Lovers Tortelloni, Butternut Squash Ravioli, Lobster Ravioli, Spinach & Ricotta Ravioli, Meat Lasagna, Chicken Alfredo Lasagna, Five Cheese Lasagna, Skillet Gnocchi, Mozzarella Cheese Ravioli.

7. Plaintiff Winn purchased Defendant's five cheese tortellini pasta in person from Albertson's (the "Product") while residing in El Cajon, California, in or around January 2025. Prior to purchasing the Product, Plaintiff saw and believed Defendant's Misrepresentation, which caused him to believe the Product did not contain any preservatives including manufactured citric acid. When purchasing the Product, Plaintiff did not expect Defendant's representation on the front label of Product to be false. Plaintiff did not expect Defendant to publicly place deceptive a statement about the product on the front label of the product.

8. At the time, Plaintiff saw and relied on the representations on the front label of the Product. Plaintiff would not have purchased the Product, or would have paid less for the Product, had he known that the Product contained the preservative manufactured citric acid. As a result, Plaintiff suffered injury in fact when he spent money purchasing the Product he would not have purchased, or would have paid less for, absent Defendant's misconduct.

9. Plaintiff desires to, and would purchase Defendant's Products again if the Products' labels were accurate and if the Products truthfully were free from preservatives. However, because of Defendant's ongoing misrepresentations, Plaintiff is unable to rely on the Products' labeling when deciding in the future whether to purchase the Products. Considering that the Defendant continues to sell the Product for sale, he is at an imminent risk of future injury.

10. Plaintiff reserves the right to amend the Complaint to add different or additional defendants, including without limitation any officer, director, employee, supplier, or distributor of Defendant who has knowingly and willfully aided, abetted, and/or conspired in the false and deceptive conduct alleged herein.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A), as amended by the Class Action Fairness Act of 2005 ("CAFA"), because this case is a class action where the aggregate claims for all members of the proposed class are in excess of $5,000,000.00, exclusive of interests and costs, there are over 100 members of the putative class, and at least one class member is a citizen of a state different from Defendant. The Products are sold at numerous retail stores and Plaintiff is seeking to represent a nationwide class. Thus, there are over 100

members in the proposed class and the proposed class has different citizenships from Defendant. Plaintiff seeks compensatory and statutory damages, disgorgement and restitution. Plaintiff also seeks punitive damages and attorneys' fees and costs. *See Montera v. Premier Nutrition Corp.*, No. 16-CV-06980-RS, 2022 WL 10719057, at *3 (N.D. Cal. Oct. 18, 2022), aff'd, 111 F.4th 1018 (9th Cir. 2024) (noting lodestar after jury trial in consumer protection action was $6,806,031.96). Thus, upon information and belief, aggregate sales of the Products during the Class Period exceed $5 million.

12. The Court has personal jurisdiction over the parties because Plaintiff resides in this District and because Defendant has, at all times relevant hereto, systematically and continually conducted, and continues to conduct, business in California, including within this District. Defendant therefore has sufficient minimum contacts with this state, including within this District and/or intentionally availed itself of the benefits and privileges of the California consumer market through the promotion, marketing, and sale of its products and/or services to residents within this District and throughout California.

13. Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District. Also, Plaintiff resides in this District and purchased the Product within this District. Moreover, Defendant systematically conducts business in this District and throughout the State of California, and it distributed, advertised, and sold the Products to Plaintiff and Class Members in this State and District.

## FACTUAL BACKGROUND

### A. Defendant's background and deception

14. Defendant sells a variety of Italian food products.

15. Defendant represents on the front of the packaging of the Products that the Products contain "no preservatives" as illustrated below:




16. Defendants also reiterates its representations in its online listing for the Product.

17. All of the Products have uniformly represent on the front of the packaging "no preservatives" as illustrated above.

18. The representation on the front label of the Products gives the impression that the Products contain no artificial preservatives.

19. The Misrepresentation was made on the Product's label at the time of Plaintiff's purchase in January 2025.

20. Defendant uniformly makes the Misrepresentation on the front label of all the Products.

21. Despite the Misrepresentation on the Products, the Products back panel reveals that the Products contain an artificial preservative – manufactured citric acid.

**C. The Citric Acid in the Products is Not Natural**

22. Defendant uses artificial manufactured citric acid in Products.[2] Commercial food manufacturers use a synthetic form of citric acid that is derived from heavy chemical processing.[3] Commercially produced citric acid is manufactured using a type of black mold called *Aspergillus niger* which is modified to increase citric acid production.[4] Consumption of manufactured citric acid has been associated with a adverse health events like joint pain with swelling and stiffness, muscular and stomach pain, as well as shortness of breath.[5] Defendant does not use natural citric acid extracted from fruit in the Products. This is because "[a]proximately 99% of the world's production of [citric acid] is carried out using the fungus *Aspergillus niger* since 1919." *Id*. As explained by a study published in the *Toxicology Reports Journal*:

> Citric acid naturally exists in fruits and vegetables. However**, it is not the naturally occurring citric acid, but the manufactured citric acid (MCA) that is used extensively as a food and beverage additive**. Approximately 99% of the world's production of MCA is carried out using the fungus. *Aspergillus niger* since 1919. *Asperiglus niger* is a known allergen. [6]

23. A technical evaluation report for citric acid compiled by the United States Department of Agriculture Marketing Services ("USDA AMS") further explains that is not commercially feasible to use natural citric acid extracted from fruits:

---

[2] Iliana E. Sweis, et al., Potential role of the common food additive manufactured citric acid in eliciting significant inflammatory reactions contributing to serious disease states: A series of four case reports, T OXICOL REP. 5:808-812 (2018), available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6097542/

[3] A. Hesham, Y. Mostafa & L. Al-Sharqi, Optimization of Citric Acid Production by Immobilized Cells of Novel Yeast Isolates, 48 M YCOBIOLOGY 122, 123 (2020), available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7178817/

[4] *Id*; Pau Loke Show, et al., Overview of citric acid production from Aspergillus niger, FRONTIERS IN L IFE SCIENCE, 8:3, 271-283 (2015), available at https://www.tandfonline.com/doi/full/10.1080/21553769.2015.1033653

[5] Iliana E. Sweis, et al., Potential role of the common food additive manufactured citric acid in eliciting significant inflammatory reactions contributing to serious disease states: A series of four case reports, T OXICOL REP. 5:808-812 (2018), available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6097542/

[6] *Id*. (emphasis added)

> "Traditionally by extraction from citric juice, [is] no longer commercially available. It is now extract by fermentation of a carbohydrate substance (often molasses) by citric bacteria, *Asperillus niger* (a mold) or *Candida guilliermondii* (a yeast). Citric acid is recovered from the fermentation broth by a lime and sulfuric acid process in which the citric acid is first precipitated as a calcium salt and then reacidulated with sulfuric acid."[7]

24. When asked "Is this substance Natural or Synthetic?" USDA AMS reviewers state: "synthetic."[8]

25. The FDA has determined that manufactured citric acid is not natural; it is artificial. The FDA sent warning letters to Hirzel Canning Company and Oak Tree Farm Dairy, Inc., for similar violations, saying that the FDA's policy involving the use of the word natural means that nothing artificial or synthetic has been added to the product, and that a product that labels itself "100% Natural" or "All Natural" violates that policy if it contains citric acid, and that the presence of citric acid precludes the use of the term natural to describe the product.[9]

26. The FDA explains that "Solvent extraction process for citric acid" is accomplished via "recovery of citric acid from conventional *Aspergillus niger* fermentation liquor may be safely used to produce food-grade citric acid in accordance with the following conditions: (a) The solvent used in the process consists of mixture of n-octyl alcohol meeting the requirements of § 172.864 of this chapter, ***synthetic*** isoparaffinic petroleum hydrocarbons meeting the requirements of § 172.882 of this chapter, and tridodecyl amine. 21 C.F.R. § 173.280 (emphasis added). Chemical solvents such as n-octyl alcohol and synthetic isoparaffinic petroleum hydrocarbons are used to extract the citric acid that Defendant uses in the Products from *aspergillus niger* fermentation liquor. *See* 21 C.F.R § 173.280. The citric acid that Defendant uses in the Products is produced through chemical solvent extraction and contains residues of those chemical solvents.

---

[7] **Exhibit B** at page 6.

[8] **Exhibit B** at pages 4-5.

[9] *See* **Exhibit C** at page 2 and **Exhibit D** at page 2.

27. The *Toxicology Reports Journal* study explains that "the potential presence of impurities or fragments from the *Aspergillus niger* in [manufactured citric acid] is a significant difference that may trigger deleterious effects when ingested."[10] The study further explains:

> "Given the thermotolerance of A. niger, there is great potential that byproduct of A. niger remain in the final [manufactured citric acid] product. Furthermore, given the pro-inflammatory nature of A. niger even when heat-killed, repetitive ingestion of [manufactured citric acid] may trigger sensitivity or allergic reactions in susceptible individuals. Over the last two decades, there has been a significant rise in the incidence of food allergies" *Id*.

28. The EPA provides the following simply schematic of the manufacturing process for citric acid which includes the use of synthetic solvents like Sulfuric Acid.[11]




[10] Iliana E. Sweis, *et al., Potential role of the common food additive manufactured citric acid in eliciting significant inflammatory reactions contributing to serious disease states: A series of four case reports*, TOXICOL REP. 5:808-812 (2018), available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6097542/

[11] https://www.epa.gov/system/files/documents/202303/Citric%20Acid%20Supply%20Chain%20Profile.pdf (last accessed March 13, 2026)

29. Dr. Ryan Monahan, a prominent functional medicine practitioner, notes that the "[p]resent day process of creating manufactured citric acid involves feeding sugars derived from GMO corn to black mold, which then ferments to form manufactured citric acid."[12].

30. Dr. Monahan also notes that "*Aspergillus niger* is associated with systemic inflammatory issues, including respiratory, gastrointestinal, neurological and musculoskeletal. Due to the potential for fragments of *Aspergillus niger* to make their way into the finished product of manufactured citric acid, this toxic inflammatory substance is likely being ingested by consumers of Products containing citric acid. Even with high-heat processing to kill it, research has shown *Aspergillus niger* can still elicit an inflammatory response."[13]

31. Clinical nutritionist Serge Gregoire, notes that [f]ood manufacturers leave out that citric acid is derived from genetically modified black mold grown on GMO corn syrup" and that "[c]ompanies continuously capitalize on an ignorance-based market."[14] Gregoire states, "Citric acid production has become a refined and highly prized industrial process." Gregoire note that the *Aspergillus niger* used to produce citric acid is engineered to increase production of citric acid which has "resulted in countless generations of genetically modified mutant variants, now specialized for industrial-scale economics."

32. "Further genetic modification in the lab has taken place through the engineering of the glycolytic pathway, resulting in a metabolic-streamlining that facilitates greater citric acid production from sugar while shutting off side avenues of glycolysis." *Id*.

33. "Mutagenesis has been used in recent years to improve the citric-acid producing strains so that they can be used in industrial applications. The most common methods include the use of mutagens to induce mutations on the parental strains. The mutagens utilized for improvements

---

[12] Dr. Ryan Monahan, *Citric Acid: A Common Food Additive With An Uncommon Source* (2024) *available at* https://www.peacefulmountainmedicine.com/post/citric-acid-a-common-food-additive-with-an-uncommon-source (Last accessed March 12, 2026)

[13] Dr. Ryan Monahan, *Citric Acid: A Common Food Additive With An Uncommon Source* (2024) *available* at https://www.peacefulmountainmedicine.com/post/citric-acid-a-common-food-additive-with-an-uncommon-source.(last accessed March 12, 2026)

[14] Serge Gregoire, Avoid citric acid: a mold byproduct! (July 13, 2021) *available at* https://www.linkedin.com/pulse/avoid-citric-acid-mold-byproduct-serge-gregoire/

are gamma radiation, ultraviolet radiation and often chemical mutagens. For hyperproducer strains, a hybrid method that combines ultraviolet and chemical mutagens is used (Ratledge & Kristiansen Citation2001).[15]

34. Below is a schematic representation of the metabolic reactions involved in citric acid production, the enzymes (italics), the known feedback loops (dashed lines) and their locations with the cellular structure of *Aspergillus niger*.[16]




[15] Show, P. L., Oladele, K. O., Siew, Q. Y., Aziz Zakry, F. A., Lan, J. C. W., & Ling, T. C. (2015). Overview of citric acid production from Aspergillus niger. F RONTIERS IN LIFE S CIENCE , 8(3), 271–283, *available* at https://doi.org/10.1080/21553769.2015.1033653

[16] *Id*. at Figure 3.

35. Dictionary definitions define "artificial" as something made by man. For example, "artificial" is defined as "made by human skill; produced by humans…"[17] Merriam-Webster's online dictionary states that "artificial" means "humanly contrived …"[18] Cambridge Dictionary states that "artificial" means "made by people, often as a copy of something natural."[19]

36. Below are images of the chemical process used to create citric acid for use in food – a process that is visibly artificial:








[17] *Artificial*, DICTIONARY.COM , *available at* https://www.dictionary.com/browse/artificial

[18] *Artificial*, MERRIAM -WEBSTER ' S DICTIONARY, *available at* https://www.merriam-webster.com/dictionary/artificial

[19] *Artificial*, CAMBRIDGE DICTIONARY, *available at* https://dictionary.cambridge.org/us/dictionary/english/artificial

37. Citric acid acts as an artificial flavoring and preserving agent when added to food products, including the Products at issue.[20] Citric acid has a sour acidic, and slightly tart flavor. *Id.*

38. The Food and Drug Administration ("FDA") defines a preservative as "any chemical that, when added to food, tends to prevent or retard deterioration thereof, but does not include common salt, sugars, vinegars, spices, or oils extracted from spices, substances added to food by direct exposure thereof to wood smoke, or chemicals applied for their insecticidal or herbicidal properties." 21C.F.R. §101.22(a)(5). The FDA has listed citric acid as a preservative in its "Overview of Food Ingredients, Additives and Colors" as shown below:[21]

| Types of Ingredients | What They Do | Examples of Uses | Names Found on Product Labels |
|---|---|---|---|
| Preservatives | Prevent food spoilage from bacteria, molds, fungi, or yeast (antimicrobials); slow or prevent changes in color, flavor, or texture and delay rancidity (antioxidants); maintain freshness | Fruit sauces and jellies, beverages, baked goods, cured meats, oils and margarines, cereals, dressings, snack foods, fruits and vegetables | Ascorbic acid, citric acid, sodium benzoate, calcium propionate, sodium erythorbate, sodium nitrite, calcium sorbate, potassium sorbate, BHA, BHT, EDTA, tocopherols (Vitamin E) |

39. In a warning letter sent to Chiquita Brands International, Inc. and Fresh Express, Inc., the FDA warned that certain Products were misbranded under the Federal Food Drug and Cosmetics Act because they "contain the chemical preservatives ascorbic acid and citric acid but their labels fail to declare these preservatives with a description of their functions. 21 C.F.R. [§] 101.22" (emphasis added).[22]

---

[20] https://www.webstaurantstore.com/blog/3350/what-is-citric-acid.html#:~:text=What%20Is%20Sour%20Salt?,salt%20tastes%20sour%20and%20acidic. (last accessed March 12, 2026)

[21] *Overview of Food Ingredients Additives & Colors, Food and Drug Administration*, *available at* https://web.archive.org/web/20220901032454/http://www.fda.gov/food/foodingredients-packaging/overview-food-ingredients-additives-colors.

[22] *See* **Exhibit D** at page 2 (highlighted)

40. The USDA's Food Safety Inspection Service's "Guideline for Label Approval" states that "common ***chemical*** preservatives include BHA, BHT, calcium propionate, citric acid, natamycin and sodium propionate.[23]

**CLASS ACTION ALLEGATIONS**

41. Plaintiff brings the action on behalf of herself and all others similarly situated pursuant to Federal Rules of Civil Procedure 23(a), (b)(1), (b)(2), and (b)(3). The proposed classes are defined below as ("collectively, the "Classes"):

> **The Nationwide Class**
>
> All persons in the United States who, within the applicable statute of limitations period, up to and including the date of final judgment in this action, who purchased any of Defendant's Products
>
> **Multi-State Consumer Protection Subclass:**
>
> All persons who, during the maximum period of time permitted by law, purchased Defendant's Products in Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, District of Columbia, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Missouri, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Virginia, Washington, West Virginia, Wisconsin, and Wyoming.
>
> **Multi-State Warranty Subclass:**
>
> All persons who, during the maximum period of time permitted by law, purchased Defendant's Products in Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, District of Columbia, Georgia, Hawaii, Idaho, Illinois, Indiana, Kansas, Kentucky, Maine, Massachusetts, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Virginia, Washington, West Virginia, and Wyoming.

---

[23] FSIS Guideline for Label Approval, UNITED S TATES DEPARTMENT OF AGRICULTURE , *available at* https://www.fsis.usda.gov/sites/default/files/media_file/documents/FSIS-GD-2023-0001.pdf (emphasis added)

**California Subclass:**

All persons in California who, during the maximum period of time permitted by the law, purchased Defendant's Products for their personal use.

42. The Classes do not include (1) Defendant, its officers, and/or directors; (2) the Judge and/or Magistrate to whom this cause is assigned; (3) the Judge or Magistrate's staff and family; and (4) Plaintiff's counsel and Defendant's counsel.

43. Plaintiff reserves the right to amend the above class definitions and add additional classes and subclasses as appropriate based on investigation, discovery, and the specific theories of liability.

44. ***Numerosity.*** Members of the Class are so numerous that their individual joinder herein is impracticable. On information and belief, the Class comprises at least millions of consumers. The precise number of Class members and their identities are unknown to Plaintiff at this time but may be determined through discovery. Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant.

45. ***Commonality and Predominance***. Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. Common legal and factual questions include, but are not limited to:

(a) Whether Defendant is responsible for the conduct alleged herein which was uniformly directed to all consumers who purchased the Products;

(b) Whether Defendant's misconduct set forth in this Complaint demonstrates that Defendant engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of the Products;

(c) Whether Defendant made misrepresentation concerning the Products that were likely to deceive the public;

(d) Whether Plaintiff and the Class are entitled to injunctive relief;

(e) Whether Plaintiff and the Class are entitled to money damages and/or restitution under the same causes of action as the other Class Members.

46. With respect to the California Subclass, additional questions of law and fact common to the members include whether Defendant violated California's Consumers Legal Remedies Act, ("CLRA"), Cal. Civ. Code §§ 1750, *et seq*., California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, *et seq.*, and California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq*.

47. ***Typicality.*** Plaintiff is a member of the Class that Plaintiff seeks to represent. Plaintiff's claims are typical of the claims of each Class Member in that every member of the Class was susceptible to the same deceptive, misleading conduct and purchased the Products. Plaintiff is entitled to relief under the same causes of action as the other Class Members.

48. ***Adequacy***. Plaintiff will fairly and adequately protect Class members' interests. Plaintiff has no interests antagonistic to Class members' interests, and Plaintiff has retained counsel that have considerable experience and success in prosecuting complex class-actions and consumer-protection cases.

49. ***Superiority***. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy for, *inter alia*, the following reasons: prosecutions of individual actions are economically impractical for members of the Class; the Class is readily definable; prosecution as a class action avoids repetitious litigation and duplicative litigation costs, conserves judicial resources, and ensures uniformity of decisions; and prosecution as a class action permits claims to be handled in an orderly and expeditious manner.

50. Defendant has acted or failed to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief with respect to the Class as a whole.

51. Without a class action, Defendant will continue a course of action that will result in further damages to Plaintiff and members of the Class and will likely retain the benefits of its wrongdoing.

52. Based on the foregoing allegations, Plaintiff's claims for relief include those set forth below.

## CAUSES OF ACTION

**Count I:**
**Violations of California's Unfair Competition Law ("UCL"),**
**Cal. Bus. & Prof. Code §§ 17200, *et seq*.**
**(On behalf of Plaintiff and the California Subclass)**

53. Plaintiff re-alleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

54. Plaintiff brings this claim under the UCL individually and on behalf of the California Class against Defendant.

55. The UCL prohibits any "unlawful," "fraudulent," or "unfair" business act or practice and any false or misleading advertising. Defendant committed unlawful business acts or practices by making the representations and omitted material facts (which constitutes advertising within the meaning of California Business & Professions Code section 17200), as set forth more fully herein, and by violating California's Consumers Legal Remedies Act, Cal. Civ. Code §§1750, *et seq.*, California's False Advertising Law, Cal. Bus. & Prof. § 17500, *et seq.*, 15 U.S.C. § 45, and by breaching express and implied warranties. Plaintiff, individually and on behalf of the other Class members, reserves the right to allege other violations of law, which constitute other unlawful business acts or practices. Such conduct is ongoing and continues to this date.

56. Defendant committed "unfair" business acts or practices by: (a) engaging in conduct where the utility of such conduct is outweighed by the harm to Plaintiff and the members of the Class; (2) engaging in conduct that is immoral, unethical, oppressive, unscrupulous, or substantially injurious to Plaintiff and the members of the Class; and (3) engaging in conduct that undermines or violates the intent of the consumer protection laws alleged herein. There is no societal benefit from deceptive advertising. Plaintiff and the other Class members paid for Products that are not as advertised by Defendant. Further, Defendant failed to disclose a material fact (that the Products contained manufactured citric acid) of which it had exclusive knowledge.

While Plaintiff and the other Class members were harmed, Defendant was unjustly enriched by its false misrepresentations and material omissions. As a result, Defendant's conduct is "unfair," as it offended an established public policy. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein.

57. Defendant committed "fraudulent" business acts or practices by making the Misrepresentation regarding the Products set forth herein. Defendant's business practices as alleged are "fraudulent" under the UCL because they are likely to deceive customers into believing the Products are free from artificial preservatives such as citric acid.

58. Plaintiff and the other members of the Class have in fact been deceived as a result of their reliance on Defendant's material representations and omissions. This reliance has caused harm to Plaintiff and the other members of the Class, each of whom purchased Defendant's Products. Plaintiff and the other Class members have suffered injury in fact and lost money as a result purchasing the Products and Defendant's unlawful, unfair, and fraudulent practices.

59. Defendant's wrongful business practices and violations of the UCL are ongoing.

60. Plaintiff and the Class seek pre-judgment interest as a direct and proximate result of Defendant's unfair and fraudulent business conduct. The amount of which is to be calculated is a sum certain and capable of calculation, and Plaintiff and the Class seek interest in an amount according to proof.

61. Unless restrained and enjoined, Defendant will continue to engage in the above-described conduct. Accordingly, injunctive relief is appropriate. Pursuant to California Business & Professions Code section 17203, Plaintiff, individually and on behalf of the California Class, seeks (1) restitution from Defendant of all money obtained from plaintiff and the other Class members as a result of unfair competition; (2) an injunction prohibiting Defendant from continuing such practices

in the State of California that do not comply with California law; and (3) all other relief this Court deems appropriate, consistent with California Business& Professions Code section 17203.

**<u>Count II</u>**
**Violations of California's False Advertising Law ("FAL"),**
**Cal. Bus. & Prof. Code §§ 17500, *et seq*.**
**(On Behalf of Plaintiff and the California Subclass)**

62. Plaintiff re-alleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

63. Plaintiff brings this claim individually and on behalf of the members of the proposed Class and Subclass against Defendant.

64. California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*, makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, …in any advertising device … or in any other manner or means whatever, including over the Internet, any statement, concerning … personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

65. Defendant committed acts of false advertising, as defined by § 17500, by using statements to promote the sale of its Products by making the Misrepresentation. In doing so, Defendant communicated that the Products did not contain preservatives, while omitting that the Products contain manufactured citric acid.

66. Defendant knew or should have known that its advertising claims have not been substantiated and are misleading and/or false.

67. Defendant knew or should have known, through the exercise of reasonable care, that its representations were false and misleading and likely to deceive consumers and cause them to purchase Defendant's Products.

68. Defendant's wrongful conduct is ongoing and part of a general practice that is still being perpetuated and repeated through the State of California and nationwide.

69. Plaintiff, individually and on behalf of all similarly situated California consumers, seeks individual, representative, and public injunctive relief and any other necessary orders or judgments that will prevent Defendant from continuing with its false and deceptive advertisements and omissions; restitution that will restore the full amount of their money or property; disgorgement of Defendant's relevant profits and proceeds; and an award of costs and reasonable attorneys' fees.

**Count III**
**Violations of California's Consumers Legal Remedies Act ("CLRA"),**
**Cal. Civ. Code §§ 1750, *et seq.***
**(On Behalf of Plaintiff and the California Subclass)**

70. Plaintiff re-alleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

71. Civil Code § 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorships, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person have a sponsorship, approval, status, affiliation, or connection which he or she does not have."

72. Civil Code § 1770(a)(7) prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another."

73. Civil Code § 1770(a)(9) prohibits "advertising goods or services with intent not to sell them as advertised."

74. Defendant's wrongful business practices constituted, and still constitute, a continuing course of conduct in violation of the CLRA.

75. Defendant's wrongful business practices constituted, and still constitute, a continuing course of conduct in violation of the CLRA.

76. Plaintiff and the California Subclass Members currently seek an injunction and reserve the right to amend the complaint to seek actual and punitive damages if Defendant fails to rectify its unlawful, unfair, false, and/or deceptive practices alleged herein.

**<u>Count IV</u>**
**Breach of Express Warranty[24]**
**(On behalf of Plaintiff and the Multi-State Warranty Class)**

77. Plaintiff realleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

78. Plaintiff brings this claim individually and on behalf of the Multi-State Warranty Class against Defendant.

79. Plaintiff and the Multi-State Warranty Class Members formed a contract with Defendant at the time Plaintiff and the Multi-State Warranty Class Members purchased the Products.

80. The terms of the contract include the promises and affirmations of fact made by Defendant through the Misrepresentation.

81. The labeling and advertising constitute express warranties and became part of the basis of the bargain and part of the standardized contract between Plaintiff and the Multi-State Warranty Class and Defendant.

82. As set forth above, Defendant purports through its labeling, marketing, and packaging to create an express warranty that the Products do not contain preservatives. However, Defendant breached its express warranties regarding the Products because the Products contain the preservative manufactured citric acid.

---

[24] While discovery may alter the following, Plaintiff asserts that the states with similar express warranty laws under the facts of this case include, but are not limited to: Alaska Stat. § 45.02.313; A.R.S. § 47-2313; Ark. Code § 4-2-313; Cal. Com. Code § 2313; Colo. Rev. Stat. § 4-2-313; Conn. Gen. Stat. § 42a-2-313; 6 Del. C. § 2-313; D.C. Code § 28:2 313; Ga. Code § 11-2-313; HRS § 490:2- 313; Idaho Code § 28-2-313; 810 ILCS 5/2-313; Ind. Code § 26-1-2-313; K.S.A. § 84-2-313; KRS § 355.2-313; 11 M.R.S. § 2-313; Mass. Gen. Laws Ann. ch. 106 § 2-313; Minn. Stat. § 336.2-313; Miss. Code Ann. § 75-2-313; R.S. Mo. § 400.2-313; Mont. Code Anno. § 30-2 313; Neb. Rev. Stat. § 2- 313; Nev. Rev. Stat. Ann. § 104.2313; RSA 382-A:2 313; N.J. Stat. Ann. § 12A:2-313; N.M. Stat. Ann. § 55-2-313; N.Y. U.C.C. Law § 2-313; N.C. Gen. Stat. § 25-2-313; N.D. Cent. Code § 41-02-30; ORC Ann. § 1302.26; 12A Okl. St. § 2-313; Or. Rev. Stat. § 72-3130; 13 Pa. C.S. § 2313; R.I. Gen. Laws § 6A-2-313; S.C. Code Ann. § 36-2-313; S.D. Codified Laws, § 57A 2-313; Tenn. Code Ann. § 47-2-313; Tex. Bus. & Com. Code § 2.313; Utah Code Ann. § 70A-2-313; 9A V.S.A. § 2-313; Va. Code Ann. § 59.1-504.2; Wash. Rev. Code Ann. § 62A.2-313; W. Va. Code § 46- 2-313; and Wyo. Stat. § 34.1-2-31.

83. Plaintiff and the Multi-State Warranty Class performed all conditions precedent to Defendant's liability under this contract when they purchased the Products.

84. Plaintiff and the members of the Multi-State Warranty Class would not have purchased the Products had they known the true nature of the Products.

85. As a result, Defendant violated the express warranties of the Multi-State Warranty Class. Plaintiff and each members of the Nationwide Class suffered financial damage and injury as a result and are entitled to all damages, in addition to costs, interest, and fees, including attorney's fees, as allowed by law.

**Count V**
**Breach of Implied Warranty,**
**Cal. Com. Code. § 2314**
**(On Behalf of Plaintiff and the California Subclass)**

86. Plaintiff realleges and incorporates by reference all allegations contained in the complaint, as though fully set forth herein.

87. Plaintiff brings this claim for breach of implied warranty individually and on behalf of all Classes against Defendant.

88. Plaintiff and the Class purchased the Products manufactured, advertised, and sold by Defendant, as described herein.

89. Defendant, through its act and omissions set forth herein, in the sale, marketing, and promotion of the Products, misrepresented the characteristics of the Products to Plaintiff and the Class.

90. Defendant is merchant with respect to the goods of this kind of which were sold to Plaintiff and the Class, and there was, in the sale to Plaintiff and other consumers, an implied warranty that those were merchantable.

91. However, Defendant breached that implied warranty in that the Products contained a preservative, despite the Misrepresentation.

92. As an actual and proximate result of Defendant's conduct, Plaintiff and the Class did not receive goods as impliedly warranted by Defendant to be merchantable in that the Products did not conform to promises and affirmations made on the label of the Products.

93. Plaintiff and the Class have sustained damages as a proximate result of the foregoing breach of implied warranties in the amount of the Products' price premium.

**Count VI**
**Negligent Misrepresentation**
**(On Behalf of Plaintiff and the California Subclass)**

94. Plaintiff realleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

95. Plaintiff brings this claim for negligent misrepresentation individually and on behalf of the California Subclass against Defendant.

96. Defendant had a duty to disclose to Plaintiff and Class Members correct information as to the quality and characteristics of the Products because Defendant was in a superior position than Plaintiff and Class Members such that reliance by Plaintiff and Class Members was justified. Defendant possessed the skills and expertise to know the type of information that would influence a consumer's purchasing decision.

97. During the applicable class period, Defendant negligently or carelessly misrepresented, omitted, and concealed from consumers material facts regarding the quality and characteristics of the Products, including the fact that the Products contain a preservative, despite the Misrepresentation.

98. Defendant made such false and misleading statements and omissions with intent to induce Plaintiff and Class Members to purchase the Products at premium price.

99. Defendant was careless in ascertaining the truth of its representations in that it knew or should have known that Plaintiff and Class Members would be overpaying for the Products.

100. Plaintiff and Class Members were unaware of falsity in Defendant's misrepresentations and omissions and, as a result, justifiably relied on them when making the decision to purchase the Products.

101. Plaintiff and Class Members would not have purchased the Products or paid as much for the Products if the true facts had been known.

**<u>Count VII</u>**
**Intentional Misrepresentation/Fraud**
**(On Behalf of Plaintiff and the California Subclass)**

102. Plaintiff realleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

103. Plaintiff brings this claim for intentional misrepresentation/fraud individually and on behalf of the California Subclass against Defendant.

104. Defendant had a duty to disclose to Plaintiff and Class Members correct information as to the quality and characteristics of the Products because Defendant was in a superior position than Plaintiff and Class Members such that reliance by Plaintiff and Class Members was justified. Defendant possessed the skills and expertise to know the type of information that would influence a consumer's purchasing decision.

105. During the applicable class period, Defendant intentionally misrepresented, omitted, and concealed from consumers material facts regarding the quality and characteristics of the Products, including the fact that the Products contain a preservative despite the Misrepresentation. The Misrepresentation was material and were uniformly made.

106. As noted in detail above, the Misrepresentation was false and misleading, as the Product were not free from preservatives. Defendant made the Misrepresentation with actual knowledge of its falsity and/or made it with fraudulent intent.

107. Defendant made such false and misleading statements and omissions with the intent to induce Plaintiff and Class Members to purchase the Product at a premium price, deprive Plaintiff and Class Members of property or otherwise causing injury, and thus, Defendant has committed fraud.

108. Defendant's deceptive or fraudulent intent is evidenced by motive and opportunity. Defendant knew that consumers would pay more for the Products if they believed they did not contain preservatives. For that reason, Defendant misrepresented the Products so that Defendant could realize greater profits. Defendant knew that consumers would place trust and confidence in its Products' claims and rely thereon in their purchases of the Products.

109. Plaintiff and the Class Members were unaware of the falsity in Defendant's misrepresentations and omissions and, as a result, justifiably relied on them when making the decision to purchase the Products.

110. As a proximate result of Defendant's intentional misrepresentations, Plaintiff and the Class were induced to purchase the Products at a premium.

111. Plaintiff and the Class Members would not have purchased the Products or paid as much for the Products if the true facts had been known.

112. As a result of their reliance, Plaintiff and the Class Members were injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase.

113. Defendant's conduct was knowing, intentional, with malice, demonstrated a complete lack of care, and was in reckless disregard for the rights of Plaintiff and Class Members Plaintiff and Class Members are therefore entitled to an award of punitive damages.

**COUNT VIII**
**Breach of Consumer Protection Statutes[25]**
**(On Behalf of Plaintiff and the Multi-State Consumer Protection Subclass)**

114. Plaintiff hereby incorporates the foregoing paragraphs as if fully stated herein.

115. Plaintiff brings this claim individually and on behalf of the Multi-State Consumer Protection Subclass against Defendant.

116. Defendant's acts and practices, as described herein, have deceived and/or are likely to continue to deceive members of the Multi-State Consumer Protection Subclass and the public. As described throughout the Complaint, Defendant made the Misrepresentation, even though the Product was not free from preservatives.

117. The foregoing deceptive acts and practices were directed at consumers.

118. The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the nature and value of the Products.

119. As a result of Defendant's deceptive practices, Plaintiff and the Multi-State Consumer Protection Subclass suffered an economic injury because they would not have purchased (or paid a premium for) the Products had they known that the Products were not preservative free.

---

[25] While discovery may alter the following, Plaintiff asserts that the states with similar consumer fraud laws under the facts of this case include but are not limited to: Alaska Stat. § 45.50.471, et seq.; Ariz. Rev. Stat. §§ 44-1521, et seq.; Ark. Code § 4-88-101, et seq.; Cal. Bus. & Prof. Code § 17200, et seq.; Cal. Civ. Code §1750, et seq.; Colo. Rev. Stat. Ann. § 6-1-101, et seq.; Colo. Rev. Stat. Ann. § 6-1-101, et seq.; Conn. Gen Stat. Ann. § 42- 110, et seq.; 6 Del. Code § 2513, et seq.; D.C. Code § 28-3901, et seq.; Fla. Stat. Ann.§ 501.201, et seq.; Ga. Code Ann. § 10-1-390, et seq.; Haw. Rev. Stat. § 480-2, et seq.; Idaho Code. Ann. § 48-601, et seq.; 815 ILCS 501/1, et seq.; Ind. Code § 24-5-0.5-2, et seq.; Kan. Stat. Ann. § 50-623, et seq.; Ky. Rev. Stat. Ann. § 367.110, et seq.; LSA-R.S. 51:1401, et seq.; Me. Rev. Stat. Ann. Tit. 5, § 207, et seq.; Md. Code Ann. Com. Law, § 13-301, et seq.; Mass. Gen Laws Ann. Ch. 93A, et seq.; Mich. Comp. Laws Ann. § 445.901, et seq.; Minn. Stat. § 325F, et seq.; Mo. Rev. Stat. § 407, et seq.; Neb. Rev. St. §§ 59-1601, et seq.; Nev. Rev. Stat. § 41.600, et seq.; N.H. Rev. Stat. § 358-A:1, et seq.; N.J. Stat. Ann. § 56:8, et seq.; N.M. Stat. Ann. § 57-12-1, et seq.; N.Y. Gen. Bus. Law § 349, et seq.; N.C. Gen Stat. § 75-1.1, et seq.; N.D. Cent. Code § 51-15, et seq.; Ohio Rev. Code Ann. § 1345.01, et seq.; Okla. Stat. tit. 15 § 751, et seq.; Or. Rev. Stat. § 646.605, et seq.; 73 P.S. § 201-1, et seq.; R.I. Gen. Laws § 6-13.1- 5.2(B), et seq.; S.C. Code Ann. §§ 39-5- 10, et seq.; S.D. Codified Laws § 37-24-1, et seq.; Tenn. Code Ann. § 47-18-101, et seq.; Tex. Code Ann., Bus. & Con. § 17.41, et seq.; Utah Code. Ann. § 13-11-175, et seq.; 9 V.S.A. § 2451, et seq.; Va. Code Ann. § 59.1-199, et seq.; Wash. Rev. Code § 19.86.010, et seq.; W. Va. Code § 46A, et seq.; Wis. Stat. § 100.18, et seq.; and Wyo. Stat. Ann. § 40-12-101, et seq.

120. Plaintiff and the Multi-State Consumer Protection Subclass seek to recover their actual damages, statutory damages, punitive damages, and reasonable attorneys' fees and costs.

**COUNT IX**
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Nationwide Class)**

121. Plaintiff hereby incorporates the foregoing paragraphs as if fully stated herein.

122. Plaintiff brings this claim individually and on behalf of the Nationwide Class against Defendant under California law, or, in the alternative, on behalf of the respective state laws of the Nationwide Class, which are substantially similar to the law of unjust enrichment. California law requires: (1) receipt of a benefit; (2) unjust or wrongful retention of the benefit; and (3) at the expense of another.

123. To the extent required, Plaintiff asserts this cause of action in the alternative to legal claims, as permitted by Rule 8.

124. Plaintiff and the Class Members conferred a benefit on Defendant in the form of the gross revenues Defendant derived from the money they paid to Defendant.

125. Defendant knew of the benefit conferred on it by Plaintiff and the Class Members.

126. Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff's and the Class Members' purchases of the Products, which retention of such revenues under these circumstances is unjust and inequitable because Defendant made the Misrepresentation. This caused injuries to Plaintiff and Class Members because they would not have purchased the Products or would have paid less for them if the true facts concerning the Products had been known.

127. Defendant accepted and retained the benefit in the amount of the gross revenues derived from sales of the Products to Plaintiff and Class Members.

128. Defendant has thereby profited by retaining the benefit under circumstances which would make it unjust for Defendant to retain the benefit.

129. Plaintiff and Class Members are, therefore, entitled to restitution in the form of the revenues derived from Defendant's sale of the Products.

130. As a direct and proximate result of Defendant's actions, Plaintiff and the Class Members have suffered in an amount to be proven at trial.

131. Plaintiff and the Class Members have suffered an injury in fact and have lost money as a result of Defendant's unjust conduct.

132. Plaintiff and the Class Members lack an adequate remedy at law with respect to the claim and are entitled to non-restitutionary disgorgement of the financial profits that Defendant obtained as a result of its unjust conduct.

133. Legal remedies available to Plaintiff and the Class Members are inadequate because they are not equally prompt, certain, or efficient as equitable relief. Damages are not equally certain as restitution because the standard that governs restitution is different than the standard that governs damages. Hence, the Court may award restitution even if it determines Plaintiff fails to sufficiently adduce evidence to support an award of damages. Damages and restitution are not the same amount. Unlike damages, restitution is not limited to the amount of money a defendant wrongfully acquired plus the legal rate of interest. Equitable relief, including restitution, entitles a plaintiff to recover all profits from the wrongdoing, even where the original funds taken have grown far greater than the legal rate of interest would recognize. Legal claims for damages are not equally certain as restitution because such claims require different elements. In short, significant differences in proof and certainty establish that any potential legal claim cannot serve as an adequate remedy at law.

134. Equitable relief is appropriate because Plaintiff may lack an adequate remedy at law if, for instance, damages resulting from their purchase of the Products are determined to be an amount less than the premium price of the Products. Without compensation for the full premium price of the Products, Plaintiff and the Class Members would be left without the parity in purchasing power to which they are entitled.

## Request for Relief

135. Plaintiff, individually, and on behalf of all others similarly situated, requests for relief pursuant to each claim as follows:

a. Declaring that this action is a proper class action, certifying the Class as requested herein, designating Plaintiff as the Class Representative and appointing the undersigned counsel as Class Counsel;

b. Ordering restitution and disgorgement of all profits and unjust enrichment that Defendant obtained from Plaintiff and the Class members as a result of Defendant's unlawful, unfair, and fraudulent business practices;

c. Ordering injunctive relief as permitted by law or equity, including enjoining Defendant from continuing the unlawful practices as set forth herein, and ordering Defendant to engage in a corrective advertising campaign;

d. Ordering damages in amount which is different than that calculated for restitution for Plaintiff and the Class;

e. Ordering Defendant to pay attorneys' fees and litigation costs to Plaintiff and the other members of the Class;

f. Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded; and

g. Ordering other relief as may be just and proper.

**<u>Jury Demand</u>**

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: April 7, 2026

Respectfully submitted,

**GUCOVSCHI LAW FIRM, PLLC**

By: <u>*/s/ Nathaniel H. Sari*</u>
Adrian Gucovschi (State Bar No. 360988)
Nathaniel Haim Sari (State Bar No. 362634)
165 Broadway, Fl. 23
New York, NY 10006
Telephone: (212) 884-4230
Facsimile: (212) 884-4230
E-Mail: adrian@gucovschilaw.com
nathaniel@gucovschilaw.com

*Attorneys for Plaintiff*

**CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)**

I, Nathaniel Sari, declare as follows:

1. I am an attorney at law licensed to practice in the State of California and a member of the bar of this Court. I am of counsel at Gucovschi Law Firm, PLLC, counsel of record for Plaintiff Rich Winn in this action. Rich Winn alleges that he is a citizen of California who resides in El Cajon, California. I have personal knowledge of the facts set forth in this declaration and, if called as a witness, I could and would competently testify thereto under oath.

2. The Complaint filed in this action is filed in the proper place for trial under Civil Code Section 1780(d) in that Defendant Rana Meal Solutions LLC, regularly does business in the Southern District of California, and a substantial portion of the events alleged in the Complaint, including the same misrepresentations, omissions, and injuries as alleged herein, have occurred in this District.

I declare under the penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct, and that this declaration was executed at Miami, Florida, on Tuesday, April 7, 2026.

*/s/ Nathaniel H. Sari*
Nathaniel H. Sari